# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HECTOR NARVAIZ,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.

_____/

Case No. 1:20-cv-00848-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On June 17, 2020, Plaintiff Hector Narvaiz ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 12.)

## II.      BACKGROUND

On February 1, 2016, Plaintiff protectively filed applications for DIB and SSI payments, alleging he became disabled on January 28, 2012, due to hypokalemia, headaches, depression, hypertension, chronic leg pain, and difficulty hearing. (Administrative Record ("AR") 81–82, 90–91, 250.) Plaintiff was born on March 5, 1961, and was fifty years old as of the alleged onset date. (AR 81, 90, 101, 109.) Plaintiff completed some school, approximately through the tenth grade, has past work experience as a forklift driver, and can communicate in English. (AR 249, 251.)

### A.      Relevant Medical Evidence[3]

In June 2018, consultative examiner Vinay K. Buttan, M.D. conducted an internal medicine evaluation of Plaintiff. (AR 434–42.) Plaintiff's chief complaint was worsening pain in his legs, described as located "mostly in the lower legs and feet," with numbness and tingling. (AR 434.) Plaintiff reported that his leg pain was "especially severe" when climbing steps. (AR 434.) He also reported a history of diabetes, hypertension, depression, back pain, knee pain, shoulder pain, and hand pain. (AR 434–35.)

Upon physical examination, Plaintiff presented with a normal gait without the use of an assistive device. Dr. Buttan observed tenderness in Plaintiff's entire back, and he was able to bend over and touch his toes. (AR 435.) Plaintiff's straight leg raise test result was "about 80 degrees" in his right leg and 90 degrees in his left leg. (AR 435.) "Slight tenderness" was present in Plaintiff's knees, hands, and wrists. (AR 435.) Dr. Buttan noted Plaintiff's range of motion in all joints was normal. (AR 435.) Plaintiff reported his diabetes and hypertension were both "well controlled." (AR 435.) Dr. Buttan diagnosed Plaintiff with diabetes mellitus with diabetic peripheral neuropathy causing pain in his legs and feet; generalized osteoarthritis involving shoulders, hands, wrists, and knees; back pain possible due to degenerative changes; hypertension; and depression. (AR 435.)

Dr. Buttan opined Plaintiff could: lift and carry 11 to 20 pounds occasionally; stand for four to five hours in an eight-hour workday; walk for about three to four hours in an 8-hour workday; sit without restriction; occasionally climb, balance, stoop, kneel, crouch, and crawl; and tolerate

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

occasional exposure to environmental conditions. (AR 435–40.) According to Dr. Buttan, Plaintiff "should be able to work with his hand," including the ability to "manipulate small tools, instruments, or work on the keyboard" for about three to four hours a day and "should be able to use his feet for control" for approximately three to four hours a day. (AR 435.)

Plaintiff underwent a comprehensive psychological evaluation in June 2018. (AR 443–46.) He reported spending his time "going to the library, riding a bike, or cutting the yard." (AR 444.)

**B.     Administrative Proceedings**

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on September 14, 2016. (AR 119–28.) Plaintiff's applications were denied again on reconsideration on December 8, 2016. (AR 135–45.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 146–51.) At the hearing on February 9, 2019, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 51–80.)

**1.     Plaintiff's Testimony**

Plaintiff complains of pain in both legs and swollen feet. (AR 70.) To alleviate the swelling, he puts his feet up twice a day for "about half an hour to an hour." (AR 71.) He also complains of cramping in his legs at nighttime that has been "happening for a long time" and getting worse. (AR 72.) He testified that if he uses his legs more often during the day, they get "more cramped during the night." (AR 72.)

Plaintiff testified he is able to do chores and activities around his home, such as washing dishes. (AR 65.) He can wash dishes for 15 minutes before needing to sit down for "at least 45 minutes." (AR 65.) Plaintiff testified he can stand or walk for "an hour, or a half hour" before needing to take a break. (AR 66.) Walking helps relieve his pain, and he takes his puppy with him during his walks. (AR 68.) According to Plaintiff, he walks less following an accident in December when, while out shopping, his knee "popped out of place." (AR 73.)

**2.     Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as an industrial truck operator, Dictionary of Operational Titles ("DOT") code 921.683-050, which is medium (heavy as performed) and semi-skilled work, with a specific vocational preparation

("SVP")[4] of 3. (AR 74–75.) Plaintiff also had past work as a truss assembler, DOT code 762.684-062, which is medium (heavy as performed) and semi-skilled work, with an SVP of 3; and as a farm worker (vegetable), DOT code 402.687-010, which is medium and unskilled work, with an SVP of 2. (AR 74–75.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience. (AR 76.) The VE was also to assume this person would be at the medium exertional level, could tolerate occasional ramps and stairs, could not use ladders, ropes, or scaffolding, could frequently perform balancing, stooping, and crouching, could occasionally crawl or kneel, and would not be able to work in unprotected heights or with heavy machinery with fast-moving parts. (AR 76.) The VE testified that person would not be able to perform Plaintiff's past work. (AR 76) In response to whether such a person could perform any work in the national economy, the VE testified that such a person could perform unskilled medium jobs with an SVP of 2, such as cook's helper, DOT code 317.687-010; food service hospital worker, DOT code 319.677-014; and dining room attendant, DOT code 311.677-018. (AR 77.)

The ALJ asked the VE, in a second hypothetical, to consider a person of Plaintiff's age, education, and work experience who would be at the light exertional level; could tolerate occasional ramps and stairs, but no ladders, ropes, or scaffolding; would be able to perform occasional balancing, stooping, kneeling, crouching, and crawling; and unable to work at unprotected heights or with heavy machinery with fast-moving parts. (AR 77.) The VE testified that such a person could perform light jobs in the national economy, such as counter attendant (DOT code 311.477-014); cafeteria attendant (DOT code 311.677-010); and garment bagger (DOT code 920.687-018).

In a third hypothetical, the ALJ asked the VE to consider whether an individual of the claimant's age, education, and work history, who could perform non-complex routine tasks along with the limitations identified in hypothetical one, could perform the same jobs as the person in hypothetical one, and the VE answered affirmatively. (AR 78.) In a fourth hypothetical, the ALJ asked the VE to consider whether an individual of the claimant's age, education, and work history,

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over ten years of preparation). *Id*.

who could perform non-complex routine tasks along with the limitations identified in hypothetical two, could perform the same jobs as the person at issue in hypothetical two; the VE answered affirmatively. (AR 78.) Finally, the ALJ asked the VE, in a fifth hypothetical, to consider a person of Plaintiff's age, education, and work experience who require a minimum of two additional, 15-minute unscheduled breaks in the workday to address pain, fatigue, or a medical condition, in addition to the normal breaks in a workday. (AR 78.) The VE testified there is no work such a person could perform. (AR 78–79.)

### C.     The ALJ's Decision

In a decision dated April 3, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–25.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 17–25.) The ALJ decided that Plaintiff met the insured status requirements of the Act through June 30, 2016, and he had not engaged in substantial gainful activity since January 28, 2012, the alleged onset date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: minimal osteoarthritis, diabetes mellitus, hypertension, and history of hypomagnesia and hypokalemia. (AR 17–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19–20.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 404.1567(c) and [§] 416.967(c). [Plaintiff] can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, stoop, crouch and occasionally crawl and kneel. He cannot work around unprotected heights or heavy machinery with fast moving parts.

(AR 20–23.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20–21.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but he could perform a significant number of other jobs in the local and national economies, specifically cook's helper, food service hospital worker, and dining room attendant (step five). (AR 23–24.) Ultimately, the ALJ concluded that Plaintiff was not disabled from January 28, 2012, through the date of their decision. (AR 25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 22, 2020. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

6

> impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more

than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.   DISCUSSION**

Plaintiff contends that the ALJ erred in three ways. First, Plaintiff claims the ALJ harmfully erred in their evaluation of Dr. Buttan's opinion. (Doc. 21 at 5–10; Doc. 31 at 2–5.) Second, Plaintiff asserts that the ALJ improperly discounted Plaintiff's testimony regarding his subjective complaints. (Doc. 21 at 10–12; Doc. 31 at 5–6.) Lastly, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination. (Doc. 21 at 18–21; Doc. 31 at 6–7.) For the reasons stated below, the Court determines that the ALJ properly considered Dr. Buttan's opinion but agrees with Plaintiff that the ALJ erred in their evaluation of Plaintiff's testimony and will remand the case on that basis.

A.     **The ALJ Properly Evaluated Dr. Buttan's Opinion**

1.     **Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c);[5] *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial

---

[5] Plaintiff filed his claims before March 27, 2017, so Section 404.1527, not Section 404.1520c, governs the ALJ's evaluation of medical opinions. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

**2.     Analysis**

Consultative examiner Dr. Buttan conducted an internal medicine evaluation of Plaintiff in June 2018.  (AR 434–42.)  Dr. Buttan opined that Plaintiff could: lift and carry 11 to 20 pounds occasionally; stand for four to five hours in an eight-hour workday; walk for about three to four hours in an 8-hour workday; sit without restriction; occasionally climb, balance, stoop, kneel, crouch, and crawl; and tolerate occasional exposure to environmental conditions.  (AR 435–40.)  According to Dr. Buttan, Plaintiff "should be able to work with his hands like manipulate small tools, instruments, or work on the keyboard" for about three to four hours a day and "should be able to use his feet for control" for approximately three to four hours a day.  (AR 435.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Buttan's opinion is contradicted by the opinion of consultative examiner Dr. Rios, who found that Plaintiff had no physical limitations.  (AR 378–79.)  Thus, the ALJ was required to state a "specific and legitimate reason," supported by substantial evidence, for rejecting the opinion of Dr. Buttan. *Trevizo*, 871 F.3d at 675.

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

The ALJ gave "little weight" to the opinion

> because it is overly restrictive. Although record corroborated limitations consistent with a less than medium residual functional capacity, he remains quite physically capable. For example, he rides a bike, works in the yard, takes his puppy on regular walks, and demonstrated a full range of motion about all of his joints.

(AR 23 (internal citations omitted).) The ALJ's first reason—that the opined limitations were inconsistent with Plaintiff's activities—is a specific and legitimate reason supported by substantial evidence. "An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning." *Lopez v. Saul*, No. 1:19–CV–00971–BAM, 2020 WL 6526197, at *9 (E.D. Cal. Nov. 5, 2020) (collecting cases); *Magallanes*, 881 F.2d at 754 (ALJ can properly consider conflicts between physician's opinion and the claimant's own testimony in rejecting the physician's opinion). As the ALJ observed, Plaintiff reported to the psychiatric consultative examiner that his daily activities include "going to the library, riding a bike, or cutting the yard." (AR 444.) Plaintiff also testified at the hearing that he walks to relieve pain and that he takes his puppy on his walks. (AR 66–68.) Such degree of daily activities belies Dr. Buttan's opined limitations, particularly those directed to Plaintiff's walking and postural abilities (*see* AR 435–40). *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-03 (9th Cir. 1999) (upholding ALJ decision discounting doctors' opinions based in part on claimant's daily activities).

The ALJ properly discounted Dr. Buttan's opinion for the additional reason that the opined limitations were inconsistent with the medical evidence, specifically Dr. Buttan's normal examination results. An ALJ may discount an examining physician's opinion that is not supported by the medical record. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion."). Here, the ALJ explained that Dr. Buttan's opinion was inconsistent with his examination

findings that Plaintiff's range of motion in all joints was normal.[7] (AR 435.) Such normal result undermines Dr. Buttan's opined limitations. *See Morgan*, 169 F.3d at 600–01 (The ALJ may accord an opinion less weight based upon substantial evidence, including "clinical evidence" that the ALJ finds to be conflicting.).

In sum, the ALJ stated legally sufficient reasons supported by substantial evidence to discount the restrictive opinion of Dr. Buttan. As the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner, it will not disturb the ALJ's finding on this basis, even if, as Plaintiff points out (*see, e.g.*, Doc. 21 at 8–9), some of the above-described evidence could be construed more favorably to him.[8] *See Robbins*, 466 F.3d at 882; *Thomas*, 278 F.3d at 954 (Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

**B.     The ALJ Harmfully Erred in the Evaluation of Plaintiff's Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and

---

[7] Dr. Buttan's examination also showed Plaintiff had a normal gait and the ability to bend over and touch his toes. (AR 435.)

[8] Plaintiff asserts that the ALJ's observation that "the record corroborated limitations consistent with a less than medium residual functional capacity" (AR 23) is a concession that Plaintiff's appropriate RFC is a light work capacity, consistent with Dr. Buttan's opinion. (*See, e.g.*, Doc. 21 at 7, 10, 12, 15.) The Court disagrees. A more reasonable interpretation is that the ALJ was merely noting that the record corroborated their ***own*** RFC assessment, which was a "less than medium" RFC (*see* AR 20), rather than the more restrictive degree of limitation opined by Dr. Buttan.

convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

**2.   Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20–21.) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ gave only one specific reason as to why Plaintiff's symptom statements were less than credible: they were inconsistent with the "medical evidence and other evidence in the record."

(AR 19.)  This is neither a clear nor convincing reason to discount Plaintiff's testimony because the ALJ may not reject a claimant's subjective statements for the sole reason that the testimony is inconsistent with the objective evidence.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015).  Further, although the ALJ indicates in the decision that such inconsistency is "discussed below" (AR 21), the ALJ failed to include such discussion and, more importantly, to specify which statements they found to be less than credible and why.  This is required because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence—which the Court may not do.  *See id.* at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.") (emphasis in original).

The Court also notes that the ALJ's standalone reason for discounting Plaintiff's testimony—that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision"—has been criticized by courts, including the Ninth Circuit, as "boilerplate language."  *See, e.g.*, *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).  The Ninth Circuit found this kind of language to be "problematic," as it "subverts the way an RFC must be determined relying on credible evidence, including testimony."  *Id.*  "[I]nclusion of [the] flawed boilerplate language" "does not . . . add anything to the ALJ's determination."  *Id.*  Because the ALJ included only the boilerplate language and did not specifically identify "the reasons explained in the decision," the ALJ's analysis of Plaintiff's subjective complaints was flawed.

In an effort to salvage the adverse credibility determination, the Commissioner points to statements made by the ALJ in the summation of the medical evidence supporting the RFC determination, and contends the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony beyond just inconsistency with the medical evidence. (Doc. 27 at 7–8.)  The

Ninth Circuit has explained, however, that "summariz[ing] the medical evidence supporting [the] RFC determination . . . is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to . . . ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter*, 806 F.3d at 494. Thus, "the observations an ALJ makes as part of the summary of the medical record are *not* sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. Instead, the ALJ must *link* the medical evidence at issue to the Plaintiff's testimony." *Argueta v. Colvin*, No. 1:15–cv–01110–SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citations omitted, emphasis in the original).

Here, the ALJ did not specifically identify which parts of the record conflicted with which portions of Plaintiff's testimony. Because this Court's review is limited to the rationale provided by the ALJ, the post-hoc rationalizations and inferences advanced by the Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

### 3. The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the

agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

The Commissioner does not contend that any error by the ALJ in evaluating Plaintiff's credibility was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's physical symptom statements regarding certain functional abilities and included appropriate limitations in the RFC, that may have changed the disability determination, especially given that Plaintiff alleged fairly significant limitations, including an inability to stand for longer 15 minutes before needing to sit down for "at least 45 minutes." (AR 65.) Thus, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and was not harmless.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been

fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds, contrary to Plaintiff's assertion (*see* Doc. 21 at 14–15; Doc. 31 at 7–8), that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful.  If the ALJ changes its evaluation of Plaintiff's subjective complaints, any warranted additional limitations should be incorporated in the RFC.  Conversely, there may be clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust their RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy.  The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination.[9]  If the ALJ again discounts Plaintiff's subjective symptoms, they can then provide an adequate discussion of the specific testimony they are discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016).  The ALJ must also reevaluate their conclusions at steps four and

---

[9] As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's symptom testimony, the Court does not reach Plaintiff's additional assertion of error regarding Plaintiff's current RFC (*see* Doc. 21 at 12–14; Doc. 31 at 6–7), which may need be evaluated again. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

five of the disability determination in light of any changes to Plaintiff's RFC.[10]

### V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Hector Narvaiz and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 3, 2022**                    /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE

---

[10] As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's symptom testimony, the Court does not reach Plaintiff's additional assertions of error regarding Plaintiff's current RFC, which may need be evaluated again. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").